[Cite as *State ex rel. Verhovec v. Uhrichsville*, 2014-Ohio-4848.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. | : | JUDGES: |
| JAMES VERHOVEC | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2014 AP 04 0013 |
| CITY OF UHRICHSVILLE, ET AL. | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 2011-CV-06-0707

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            October 29, 2014

APPEARANCES:

For Plaintiff-Appellant                 For Defendants-Appellees

WILLIAM E. WALKER, JR.                  GREGORY A. BECK
P.O. Box 192                            400 South Main Street
Massillon, OH  44648-0192               North Canton, OH  44720

*Farmer, J.*

{¶1} On September 27, 2010, appellant, James Verhovec, made a written request to the Clerk of Council for the city of Uhrichsville to access specific council records, to wit: "[c]ouncil meeting minutes, handwritten draft minutes and audio/video recordings captured during council proceedings from January 01, 1990 to the present date." Appellant was granted access to typewritten minutes and the audio recordings.

{¶2} On June 29, 2011, appellant filed a writ of mandamus and alternatively for statutory forfeiture pursuant to R.C. 149.43(C) and 149.351 against appellees, the city of Uhrichsville, Mayor Rick Rieger, and Clerk of Council Brian Watkins, seeking access to all of the records he had requested. In the alternative, appellant sought statutory damages, court costs, and attorney fees.

{¶3} On April 30, 2012, the trial court bifurcated the mandamus action from the forfeiture action at appellant's request.

{¶4} A hearing on the mandamus action was held on January 28, 2013. By judgment entry filed June 28, 2013, the trial court found the mandamus action to be moot, finding appellant was granted access to the typewritten minutes and the audio recordings, and handwritten draft meeting minutes did not exist.

{¶5} On September 18, 2013, appellees filed a motion for summary judgment. By judgment entry filed March 7, 2014, the trial court granted appellees' motion, finding appellant was not "aggrieved" by appellees' inability to provide all of the requested records.

{¶6} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶7}   "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT FOUND THAT APPELLANT WAS NOT AGGRIEVED AND THEREFORE AND (SIC) NO RIGHT OF PETITION TO REDRESS HIS GRIEVANCE OF BEING DENIED ACCESS TO UNLAWFULLY DESTROYED GOVERNMENT RECORDS EVEN THOUGH APPELLANT ACTUALLY WANTED THE REQUESTED RECORDS, IN VIOLATION OF (1) THE PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV OF THE UNITED STATES CONSTITUTION; (2) THE FIRST AMENDMENT PETITION CLAUSE OF THE UNITED STATES CONSTITUTION; (3) DUE PROCESS GUARANTEES OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION; AND (4) SECTION 16, ART. I OF THE OHIO CONSTITUTION."

II

{¶8}   "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT EVEN THOUGH APPELLEES FAILED TO MEET THEIR BURDEN UNDER CIV.R.56, THE BURDEN OF PRODUCTION THEREFORE NEVER SHIFTED TO APPELLANT TO DEMONSTRATE THE EXISTENCE OF A DISPUTED MATERIAL FACT, BECAUSE THERE WAS NO EVIDENTIARY MATERIAL DEMONSTRATING THAT APPELLANT DID NOT ACTUALLY WANT THE REQUESTED RECORDS; IN VIOLATION OF CIV.R. 56."

III

{¶9}   "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT EVEN THOUGH GENERAL ISSUES OF MATERIAL FACT WERE EXISTENT CONCERNING

WHETHER APPELLANT 'WANTED' THE REQUESTED RECORDS; IN VIOLATION OF CIV.R. 56."

{¶10}  Appellees filed a cross-appeal and assigned the following error:

CROSS-ASSIGNMENT OF ERROR I

{¶11} "THE TRIAL COURT ABUSED ITS DISCRETION IN STRIKING EXHIBITS A-C FROM THE RESPONDENTS-APPELLEES MOTION FOR SUMMARY JUDGMENT."

I, II, III

{¶12} Appellant claims the trial court erred in granting summary judgment to appellees. We disagree.

{¶13} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

Civ.R. 56(C)  provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511,

628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50

Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶14} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35 (1987).

{¶15} As stated by our brethren from the Ninth District in *Austin v. Peterson,* 9th Dist. Medina No. 2735-M, 1999 WL 11235, at *2 (Jan. 13, 1999):

The party that moves for summary judgment bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact regarding an essential element of the nonmoving party's claim. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once the moving party has satisfied its burden, the nonmoving party bears a reciprocal burden to set forth facts demonstrating that there is a genuine issue for trial. *Vahila v. Hall,* 77 Ohio St.3d at 429, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d at 293, 662 N.E.2d 264. When the nonmoving party fails to meet this burden, summary judgment may be appropriately granted in favor of the moving party. *Dresher v. Burt,* 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶16} In their September 18, 2013 motion for summary judgment, appellees cited R.C. 149.351 (disposal and transfer of records in accordance with law; action for injunctive relief for forfeiture) which states the following in pertinent part:

(A) All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code or under the records programs established by the boards of trustees of state-supported institutions of higher education under section 149.33 of the Revised Code. Those records shall be delivered by outgoing officials and employees to their successors and shall not be otherwise removed, destroyed, mutilated, or transferred unlawfully.

(B) Any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section, or by threat of such removal, destruction, mutilation, transfer, or other damage to or disposition of such a record, may commence either or both of the following in the court of common pleas of the county in which division (A) of this section allegedly was violated or is threatened to be violated:

(1) A civil action for injunctive relief to compel compliance with division (A) of this section, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action;

(2) A civil action to recover a forfeiture in the amount of one thousand dollars for each violation, but not to exceed a cumulative total of ten thousand dollars, regardless of the number of violations, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action not to exceed the forfeiture amount recovered.

(C)(1) A person is not aggrieved by a violation of division (A) of this section if clear and convincing evidence shows that the request for a record was contrived as a pretext to create potential liability under this section. The commencement of a civil action under division (B) of this section waives any right under this chapter to decline to divulge the purpose for requesting the record, but only to the extent needed to evaluate whether the request was contrived as a pretext to create potential liability under this section.

{¶17} In *Rhodes v. New Philadelphia,* 129 Ohio St.3d 304, 2011-Ohio-3279, ¶ 18, 23-24, 28, respectively, the Supreme Court of Ohio reviewed a decision from this court and explained the following:

"Aggrieved" is commonly defined as "having legal rights that are adversely affected; having been harmed by an infringement of legal

rights." Black's Law Dictionary (9th Ed.2009) 77. Thus, in order for Rhodes to be aggrieved, the improper conduct of New Philadelphia must have infringed upon Rhodes's legal rights. We must therefore look to the nature of the rights conferred and protected by the Public Records Act.

The same choice is not reflected in R.C. 149.351, as the General Assembly did not make the enforcement mechanism of forfeiture available to "any person." Forfeiture is available only to a person who has been "aggrieved" by the public office's violation. R.C. 149.351(B). We must give effect to every term in a statute and avoid a construction that would render any provision meaningless, inoperative, or superfluous. *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, at ¶ 21. We cannot ignore the General Assembly's use of the term "aggrieved," and we conclude that the General Assembly did not intend to impose a forfeiture when it can be proved that the requester's legal rights were not infringed, because the requester's only intent was to prove the nonexistence of the records.

The requirement of aggrievement indicates that a forfeiture is not available to "any person" who has made a request and discovered that the records were not available due to the public office's violation of R.C. 149.351; it is available only to a person who had made a request with the goal of accessing the public records. If the goal is to seek a forfeiture, then the requester is not aggrieved. The presumption, however, is that a request for public records is made in order to access the records. This

presumption is evident in other cases in which this court has construed associated terms of the public-records act.  See, e.g., *Kish v. Akron,* 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811; *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208.

The destruction of a public record in violation of R.C. 149.351(A) gives rise to a forfeiture if the requester was "aggrieved" by the destruction.  If a public office is able to establish that the requester did not actually want the records and instead wanted the request to be denied, then a finder of fact may conclude that the requester was not aggrieved by the destruction.  New Philadelphia was able to establish through competent credible evidence that Rhodes's objective was not to obtain the records he requested but to receive notice that the records had been destroyed in violation of R.C. 149.351(A) so that he could seek forfeiture awards.  Because Rhodes was not aggrieved by New Philadelphia's improper destruction of the recordings on its reel-to-reel tapes, we reverse the judgment of the Fifth District Court of Appeals.

{¶18}  In the case sub judice, it is undisputed that appellant's sole reason for requesting the records was on behalf of his uncle, Ed Verhovec.  J. Verhovec depo. at 13-14, 20-21.  Appellant did not sign the September 27, 2010 public records request which was created by his uncle.  *Id.* at 10-11, 34-35.  Appellant did not have any idea why the records had been requested.  *Id.* at 14.  Appellant was a resident of Uhrichsville, but his uncle was not.  *Id.* at 11-12.

{¶19} In response to his public records request, appellant was granted access to the meeting minutes on a website, and was informed that older resolutions and audio recordings were available for his review during regular office hours by appointment. *Id.* at 21-23. Appellant looked at the website, but "did not find all the records I was looking for." *Id.* at 21. Appellant admitted he "didn't explore deeply." *Id.* at 31. Appellant never contacted anyone about any missing meeting minutes or make an appointment to listen to the audio recordings. *Id.* at 21-26, 28-29, 31-32.

{¶20} As appellant's testimony demonstrates, he did not draft nor sign the public records request, had no idea why the records were being requested, and did nothing to pursue the viewing of the requested records. This testimony standing alone illustrates that appellant was not "aggrieved" as he had no interest in nor use for nor understanding of the need for the records.

{¶21} Appellant argues despite his lack of knowledge or understanding regarding the records request, the request was not done for the purpose of seeing if the records existed. This argument is baseless given the fact that in his own testimony, appellant acknowledged he did not review the records when invited to do so (per his request), but instead forwarded the responses to his uncle.

{¶22} Even accepting that appellant was an agent for his uncle, there is no evidence that appellant was "aggrieved" by the failure to review the handwritten draft meeting minutes that did not exist.

{¶23} As recently found in *State ex rel. Verhovec v. City of Marietta,* 4th Dist. Washington No. 12CA32, 2013-Ohio-5415, ¶ 60:

Like *Rhodes,* all of the evidence in the instant case indicates an intent to cash-in on the civil forfeiture statute.  For instance, the only explanation offered by the Verhovecs for requesting the records is Mr. [Ed] Verhovec's contracts with attorney Cushion.  Yet, Mr. Verhovec testified that he has never been paid under any of the Cushion contracts, and that he was unsure of what exactly needed to be produced in order to collect payment under the contracts.  Moreover, Mr. Verhovec has filed numerous other lawsuits throughout the state seeking forfeiture damages.  Absent the Cushion contracts, no logical explanation for these lawsuits exists.  The Verhovecs' are not historians.  They have never resided in the city of Marietta.  In fact, Mr. Verhovec had never even heard of the Public Records Act prior to entering his contract with Cushion.  Mr. Verhovec is also behind the lawsuits filed by his nephew, James Verhovec, against the village of Dennison and the City of Uhrichsville.  Those lawsuits also seek significant forfeiture damages.  We also cannot ignore the connections between Walker, the Verhovecs' counsel, and attorney Cushion, the contracting agent of the Cushion contracts.  Attorney Walker represented attorney Cushion in his very own civil forfeiture lawsuit.  Attorney Walker also represented Timothy Rhodes in the Chillicothe lawsuit, in which Rhodes allegedly sought the records to fulfill his contract with Cushion.  Finally, Walker represented James Verhovec in his lawsuits against Uhrichsville and Dennison.

{¶24} Upon review, we find the trial court did not err in granting summary judgment to appellees.

{¶25} Assignments of Error I, II, and III are denied.

CROSS-ASSIGNMENT OF ERROR I

{¶26} Having sustained the trial court's findings without the stricken exhibits, Exhibits A-C attached to appellees' motion for summary judgment, we find this cross-assignment to be moot.


By Farmer, J.

Delaney, J. concur and

Hoffman, P.J. dissents


SGF/sg 926

*Hoffman, P.J., dissenting*

{¶27}  I respectfully dissent from the majority opinion.

{¶28}  While the deposition testimony of Appellant as cited in the majority opinion fails to establish how he, or his uncle, were "aggrieved" by the destruction of the handwritten meeting minutes, I find such failure does not serve to affirmatively establish the opposite corollary; i.e., that the request was merely to prove the notes did not exist in order to take advantage of the civil forfeiture penalties.  Unlike the companion case argued the same day as the case *sub judice*, *State ex rel. Verhovec v. The Village of Dennison*, Tusc. County Appeal No. 13-62, the transcript of the deposition of Edward Verhovec taken in *State ex rel. Vehovec v. City of Marietta*, Washington County Court of Common Pleas Case No. 2011-OT-0202 and copies of two contracts between Edward Verhovec and Attorney Paul Cushion were stricken from this record.  I find the stricken evidence was key to establishing neither Appellant, nor his uncle, were "aggrieved" by the destruction of the hand-written meeting notes; rather, both merely sought to prove their non-existence for financial gain.  This difference in record evidence formed the basis for the different result I reached in the companion case.

{¶29}  While the quotation from the Fourth District's opinion in *State ex rel. Verhovec v. City of Marietta* embodied in the majority opinion is enlightening, it cannot be used as a substitute to establish an evidentiary factual predicate in this case.

{¶30} Likewise, I find the fact the record contains copies of the complaints (whether three or six) filed by various Verhovecs against other public entities, while

certainly relevant and suspicious, is insufficient to establish neither Appellant nor his

uncle were not aggrieved by the destruction of the hand-written meeting notes.[1]

_____
HON. WILLIAM B. HOFFMAN

---

[1] Suffice it to say had the stricken deposition of Edward Verhovec and the Attorney Cushion contracts been properly made part of this record, my decision would have been different.